UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

TAMMY BRAKE                                         CASE NO. 19-CV-280

      Plaintiff,

                                               COMPLAINT AND JURY DEMAND

v.

SLOCHOWSKY AND SLOCHOWSKY, LLP,
EAST 22ND STREET TOWERS LLC
YOSSEL LICHTMAN
SARA LICHTMAN
MAYER WALDMAN

      Defendants.

-------------------------------------------------------------------x

      Plaintiff TAMMY BRAKE, by and through her attorney the Urban Justice Center, brings

this action against Defendants SLOCHOWSKY AND SLOCHOWSKY, LLP, YOSSEL

LICHTMAN, SARA LICHTMAN, MAYER WALDMAN, and EAST 22ND STREET

TOWERS LLC, and alleges as follows

### PRELIMINARY STATEMENT

      1. Plaintiff Tammy Brake brings this action for actual and statutory damages and

injunctive relief, based on violations of the Fair Debt Collection Practices Act, 15 USC 1692, et

seq. ("FDCPA"), N.Y.C. Admin. Code 27-2004 (a)(48)(i),(ii)(d) ("Tenant Harassment Law"),

N.Y. General Business Law § 349, and N.Y. Judiciary Law § 48 for sending a false and

misleading rent demand to plaintiff, and filing repeated false and misleading petitions in

housing court for nonpayment of rent with the intent to harass plaintiff.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction to hear this claim as it arises under the federal laws of the United States, codified at 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1331 and § 1337(a). This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

3.  Venue is appropriate in the Eastern District of New York because all defendants conduct business in this district and the complained-of conduct occurred within this district.

## PARTIES

4.  Plaintiff Tammy Brake is a natural person residing in Brooklyn, New York with her husband and daughter.  She is the rent stabilized tenant of 596 East 22nd Street, Apt. 4B, Brooklyn, NY 11226.

5.  Ms. Brake is a "consumer" within the definition of 15 USC 1692a(3).

6.  Defendant Slochowsky and Slochowsky, LLP ("Slochowsky") is a domestic limited liability partnership and law firm with a principal place of business at 26 Court Street, Suite 304, Brooklyn, NY 11242.

7.  Slochowsky brings debt collection lawsuits in New York Civil Court and seeks to collect debts owed by others.  Slochowsky is a debt collector because it regularly collects or attempts to collect debts owed or asserted to be owed to another. 15 USC 1692a(6).

8.  East 22nd Street Towers LLC ("East 22") is a domestic limited liability corporation with a principal place of business at 311 Rogers Ave., Brooklyn, NY 11225.  East

22 is the owner of 596 East 22nd Street, Brooklyn, NY, the building in which plaintiff Tammy Brake is a tenant.

9.  Yossel Lichtman is registered with the New York City Department of Housing Preservation and Development as the "Head Officer" of East 22nd Street Towers LLC in direct or indirect control of the building at 596 East 22nd Street, Brooklyn, NY.

10.     Mayer Waldman is registered with the New York City Department of Housing Preservation and Development as the "Managing Agent" in direct or indirect control of the building at 596 East 22nd Street, Brooklyn, NY.

11.     Sara Lichtman is registered with the New York State Department of State as the "Registered Agent" of East 22nd Street Towers LLC.

## STATEMENT OF FACTS

12.      Plaintiff Tammy Brake is the rent stabilized tenant of 596 East 22nd Street, Apt. 4B, Brooklyn, NY 11226.  She has been the tenant of this apartment for over 30 years.  She lives there with her husband Earl and her daughter.

13.     Ms. Brake is a retired corrections officer and works as a home health aide, making about $40,000.00 per year.

14.     Ms. Brake has been active in her building's tenant association for more than nine years, and has advocated openly with her landlord on behalf of her neighbors on issues including physical conditions in the building, rent increases, and relations between tenants and the landlord's agents.  In this role, Ms. Brake has interacted in person with the principal owners of East 22 and is well known to them.

**First Baseless Lawsuit**

15.     On or about January 11, 2018, East 22 mailed Ms. Brake a "5 Day Notice" asserting that she owed her full rent for the months of November 2017, December 2017, and January 2018, at $710.27 per month, for a total of $2130.81.  The notice stated that if Ms. Brake did not "make complete payment of the rent or surrender possession of the premises [by January 22, 2018], the Landlord will commence summary proceedings to recover possession of the above-references premises."

16.     At the time that East 22 sent her the 5 Day Notice, Ms. Brake had paid her rent for November 2017, December 2017, and January 2018.  East 22 had already cashed her rent checks for November and December 2017, and cashed her January rent check on January 12, the day after sending the Notice.

17.     On February 13, 2018, the Urban Justice Center, as attorneys for Ms. Brake, mailed a letter to East 22 stating that all rent had been paid for the alleged months, and attaching copies of the relevant canceled checks as proof.

18.     Nevertheless, Slochowsky, on behalf of East 22, commenced an eviction proceeding against Ms. Brake in Brooklyn Housing Court seeking to collect the same rent already paid and documented in the February 13 letter.  The proceeding was captioned East 22nd Street Towers, LLC v. Tammy Lee Brake, index no. 55135/2018 ("February case").

19.     Specifically, the Housing Court petition sought $2130.81 as rent arrears for December, January, and February (differing from the 5 Day Notice's claims for November, December and January), and also demanded $272.00 in legal fees.  The Housing Court petition was verified by William Slochowsky, a Partner in Slochowsky and Slochowsky.

20.     The Urban Justice Center appeared in Housing Court on February 21, 2018 as attorney for Ms. Brake.  Slochowsky appeared by its associate attorney, Charles Loveless.  In court, Mr. Loveless provided a printout from East 22's rent ledger acknowledging that East 22 had timely received and cashed Ms. Brake's rent checks for every month from February 2016 through February 2018, including all the months alleged in the 5 Day Notice and petition, and had recorded these payments in its computer before sending the notice and commencing the case.

21.     The rent ledger also listed an unspecified "carried balance" of $637.54 from prior to February 2016, the earliest month listed in the ledger.  Mr. Loveless was unable to say when or how East 22 believed that this balance had arisen.  Mr. Loveless refused to discontinue the proceeding because of this unspecified balance.  The proceeding was adjourned to March 13, 2018 for East 22 and Slochowsky to provide a rent ledger or other evidence to specify and substantiate its new claim.

22.     On the return date of March 13, 2018, Slochowsky was unable to produce any evidence supporting the starting balance or even to state what month it was believed to have come from.  Because East 22's and Slochowsky's own records showed that the arrears alleged in the petition and 5 Day Notice had never existed, and because Slochowsky could not state a claim for the unspecified $637.54 balance, the proceeding was discontinued with prejudice to all rent through February 2018.[1]

**<u>Second Baseless Lawsuit</u>**

23.     On or about June 4, 2018, East 22 mailed Ms. Brake another 5 Day Notice alleging that she owed $2130.81 in rent arrears.  Ms. Brake did not owe this rent.

---

1. The stipulation of settlement did not include March 2018 because East 22 had not yet cashed Ms. Brake's rent

24.     On or about July 30, 2018, Slochowsky commenced a second Housing Court eviction proceeding against Ms. Brake, with the petition seeking $1711.75 in alleged arrears and legal fees.  This proceeding was captioned <u>East 22nd Street Towers LLC v. Tammy Lee Brake</u>, index no. 76107/2018 ("July case").

25.     The Urban Justice Center again appeared as attorneys for Ms. Brake on August 6, 2018.  Slochowsky appeared by another of its attorney associates, John Cannavo.  Mr. Cannavo provided a printout from East 22's rent ledger showing that East 22 was suing for arrears of $710.27 that had allegedly accrued before the end of February 2018, despite the March 13 stipulation having settled all rent claims with prejudice through February 2018.  The rent ledger had not been updated to reflect the prior settlement, and indeed still listed the same unspecified "carried balance" that neither East 22 nor Slochowsky had been able to substantiate, and that had been waived in the prior proceeding.

26.     Mr. Cannavo refused to discontinue any claim to the portion of the alleged arrears preceding the prior stipulation.  Instead, the proceeding was adjourned to October 3, 2018 "for parties to review ledger."

27.     On August 6, immediately after court, the Urban Justice Center emailed Mr. Cannavo a copy of the March 13 stipulation, though it was already in Slochowsky's possession, and asked that Slochowsky discontinue any claims for arrears allegedly arising before March 1, 2018.  Mr. Cannavo did not respond.

28.     On September 10, the Urban Justice Center again emailed Mr. Cannavo to request that the case be discontinued.  Mr. Cannavo replied on September 14 that Slochowsky's and East 22's records showed that Ms. Brake had paid all rent from March 2018 through

check for that month.

September 2018, but that he believed Ms. Brake owed rent for April 2017, and therefore Slochowsky would not discontinue the case.

29.     Slochowsky thus took the position that it would maintain the nonpayment proceeding solely to seek a judgment for alleged 2017 arrears that were precluded by the March 2018 stipulation.  In addition, the rent ledger shared by Slochowsky did not actually show any rent owed from April 2017.

30.     The parties appeared in court on the October 3 adjourn date solely to deal with the claims for alleged pre-2018 arrears.

31.     In court on October 3, Mr. Cannavo again acknowledged that Ms. Brake had paid rent for every month from March through September 2018.  Nevertheless, he balked at discontinuing the case, claiming again that Ms. Brake owed a month's rent either from April 2017 or an unspecified month in 2015 (he could not say which).  Mr. Cannavo acknowledged the March 2018 stipulation but asserted that Slochowsky and East 22 intended to pursue the pre-2018 rent allegations nonetheless.

32.     Only after Ms. Brake was made to wait in court for several hours did Mr. Cannavo admit that, as before, East 22 could not document any rent arrears from 2017, 2015, or any other year.  After Ms. Brake had missed a number of hours of work, Mr. Cannavo finally stipulated that the proceeding was discontinued with prejudice and "all rent is paid through September 2018."[2]

33.     The stipulation also provided that East 22 would inspect and repair a water leak and mold in Ms. Brake's bathroom ceiling on October 17 and 18.  No one from East 22 appeared at Ms. Brake's apartment on those dates or since.

_____

2. As in the prior proceeding, Slochowsky would not agree to include the current month in the stipulation because

34.     As a result of the two eviction cases brought by Slochowsky and East 22, Ms. Brake was forced to appear in court six times (once for each case to file an answer in the clerk's office, and two court dates in each case).  She was forced to miss more than 30 hours of work altogether.  Ms. Brake works full time and is paid hourly, so that missed work hours mean lost wages.

35.     Ms. Brake also suffered from stress and anxiety as a result of the false demands for rent and the court cases.  Both 5 Day Notices demanded that she and her family surrender their apartment or face legal action.  Both court cases sought judgments of eviction. Thus, Ms. Brake and her family lived under threat of eviction for eight of the first ten months of 2018.

36.     For the entire period from the first 5 Day Notice in January 2018 through the final stipulation of settlement in October 2018, Slochowsky and East 22 were in possession of rent ledgers plainly stating that their claims were false.  For the entire period of the second court case, Slochowsky and East 22 aggressively pursued litigation for claims that they knew were not only false, but precluded by the March 2018 stipulation (which Slochowsky itself had negotiated and signed).  Slochowsky's and East 22's actions were either deliberate attempts to collect a debt that they knew was not owed and legally could not be collected, or else stunningly careless actions taken without even the slightest review of the records in their possession.

---

East 22 had not yet cashed that month's rent check.

## CLAIMS

### FIRST CAUSE OF ACTION
### Violation of the Fair Debt Collection Practices Act (Defendant Slochowsky)

37.     Plaintiff repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

38.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 USC 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002) (holding that "Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope"). Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance").

39.     Plaintiff was a consumer as defined by 15 USC 1692a(3) because she was alleged to owe a debt.

40.     Defendant Slochowsky is a debt collector under 15 USC 1692a(6) because it sends thousands of collection letters and and files thousands of collection lawsuits as attorneys for plaintiffs seeking to collect alleged rental debts.  As of this writing, defendant Slochowsky is litigating more than 120 currently pending Housing Court lawsuits that it commenced on behalf of landlords seeking to collect alleged rental arrears.

41.     The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

42.     Defendant Slochowsky materially violated the following sections of the FDCPA: 15 USC 1692d, 1692e, and 1692f.  Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt:

(i)     By initiating the February 2018 summary Housing Court proceeding, which had no legal basis and demanded payment of rent that was in fact not due and owing, Defendant Slochowsky

(A)     engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt;

(B)     used false, deceptive, or misleading representations or means;

(C)     misrepresented the amount, character, or legal status of a debt;

(D)     threatened to take and actually did take an action prohibited by law for the purposes of coercing plaintiff to pay the alleged debt; and

(E)     used unfair or unconscionable means.

(ii)    By initiating and maintaining the July 2018 summary Housing Court proceeding, which demanded payment of rent that was in fact not due and owing, Defendant Slochowsky

(A)     engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt;

(B)     used false, deceptive, or misleading representations or means;

(C)     misrepresented the amount, character, or legal status of a debt;

(D)     threatened to take and actually did take an action prohibited by law for the purposes of coercing plaintiff to pay the alleged debt; and

(E)     used unfair or unconscionable means.

43.     As a result of the above violations of the FDCPA, plaintiff suffered damages in the form of lost work income, travel costs to Housing Court, and emotional distress caused by her fear of losing her home.  She is therefore entitled to a judgment against defendant Slochowsky for actual and statutory damages in an amount to be determined by the trier of fact, as well as an award of reasonable attorneys' fees and costs pursuant to the FDCPA.

## SECOND CAUSE OF ACTION

### Violation of the Judiciary Law 487 (Defendant Slochowsky)

44.     Plaintiff repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

45.     NY Jud. Law 487 states

> [a]n attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

46.     Defendant Slochowsky violated Jud. Law 487 by:

   i.  Commencing nonpayment summary proceedings against Plaintiff when
       she did not owe any arrears, or did not owed the arrears alleged;

  ii.  Stating that arrears were owed by Plaintiff for specific months for which
       records in Defendants' possession showed that all rent had been paid by
       Plaintiff;

 iii.  Stating that arrears were owed by Plaintiff when Defendants did not have
       any documentation showing that such rent was owed;

  iv.  Commencing a nonpayment summary proceeding against Plaintiff based
       on claims that had already been litigated to finality with prejudice in a
       prior proceeding between Plaintiff and Defendants.

47.     As a result of these violations, plaintiff suffered damages in the form of
lost work income, travel costs to Housing Court, and emotional distress caused by her fear of
losing her home.

## THIRD CAUSE OF ACTION

### Violation of the N.Y.C. Admin. Code 27-2004(a)(48)(i),(ii)(d), (d-1) and 27-2005(d) (Defendants East 22, Yossel Lichtman, Sara Lichtman, & Mayer Waldman

48.     Plaintiff repeats and realleges paragraphs 1 through 36 as through fully set
forth herein.

49.     N.Y.C. Admin. Code 27-2005(d) states that "The owner of a dwelling
shall not harass any tenants or persons lawfully entitled to occupancy of such dwelling as set
forth in paragraph 48 of subdivision a of section 27-2004 of this chapter."

50.     N.Y.C. Admin. Code 27-2004(a)(48) defines harassment as, inter alia

any act or omission by or on behalf of an owner that (i) causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy, and (ii) includes one or more of the following acts or omissions, provided that there shall be a rebuttable presumption that such acts or omissions were intended to cause such person to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy . . .

d. commencing repeated baseless or frivolous court proceedings against any person lawfully entitled to occupancy of such dwelling unit;

d-1. commencing a baseless or frivolous court proceeding against a person lawfully entitled to occupancy of such dwelling unit if repeated baseless or frivolous court proceedings have been commenced against other persons lawfully entitled to occupancy in the building containing such dwelling unit.

51.     N.Y.C. Admin. Code 27-2115(h) provides a private right of action based on a claim of tenant harassment.  N.Y.C. Admin. Code 27-2115(m)(2) provides for injunctive relief when a court of competent jurisdiction finds that a violation of 27-2005(d) has occurred. N.Y.C. Admin. Code 27-2115(o) provides for compensatory, statutory, and punitive damages to be awarded against a defendant that has violated 27-2005(d).

52.     Defendants East 22, Yossel Lichtman, Sara Lichtman, and Mayer Waldman violated N.Y.C. Admin. Code 27-2005(d) by bringing repeated baseless nonpayment proceedings against plaintiff when they knew or should have known that plaintiff did not owe the rental arrears sought, that the allegations in defendants' court filings were not a good faith representation of the information contained in defendants' records, when defendants had been informed by plaintiff and her attorney that the allegations were inaccurate, and when defendants had been a party to or had guided prior litigation in which their claims had already been litigated to finality with prejudice.

53.     Defendants committed the above acts with the express intention of inducing plaintiff to surrender her rent-regulated tenancy and vacate her apartment, or else to waive her right to continue residing in the apartment without paying additional rent beyond what defendants were permitted to charge under the lease and the Rent Stabilization Code.

54.     Plaintiff is entitled to injunctive relief in the form of an order enjoining East 22, Yossel Lichtman, Sara Lichtman, and Mayer Waldman from further violations of N.Y.C. Admin. Code 27-2005(d).

## FOURTH CAUSE OF ACTION

### Violation of NY General Business Law 349 (all defendants)

55.     Plaintiff repeats and realleges paragraphs 1 through 36 as through fully set forth herein.

56.      New York General Business Law §349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

57.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

58.     As enumerated above, defendants have violated N.Y. Gen. Bus. Law § 349 by using deceptive acts and practices in the conduct of their business that have broad impacts on consumers at large. This includes a pattern and practice of misrepresenting the fact and amount

of rental arrears to tenants and to courts, and actively concealing the existence of prior payments, settlements, and court orders that affect rental arrears.

59.     Defendants engage in this pattern and practice because it is profitable and because it would be more costly for defendants to implement systems that would accurately track rental payments and arrears.  The result is that tenants are falsely led to believe that they owe money that they do not owe, are prevented from preparing adequate responses in order to avoid or to properly defend themselves in court proceedings.  Tenants may be induced to pay more than the rent they properly owe under their leases, may be liable for legal fees and costs for unnecessary litigation, and may even be evicted from their homes on the basis of fictitious rent arrears.

60.      For these reasons and for the other reasons stated in the statement of facts, defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

61.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 et seq, Ms. Brake suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorney's fees.

**<u>JURY DEMAND</u>**

62.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully seeks:

a)    A declaration that defendants have committed the violations of law alleged in this

action;

b)    An order enjoining and directing defendants to cease violating N.Y.C. Admin.

Code 27-2005(d);

c)    Statutory, compensatory, and/or punitive damages pursuant to 15 U.S.C. 1692k,

N.Y. Gen. Bus. Law 349, and N.Y.C. Admin. Code 27-2115(o);

d)    Treble damages pursuant to N.Y. Jud. Law 487(1) and N.Y. Gen. Bus. Law 349;

e)    A judgment for statutory, compensatory, punitive, and treble damages;

f)    An order enjoining and directing defendants to cease violating N.Y. Gen. Bus.

Law 349;

g)    Pre- and post-judgment interest as allowed by law;

h)    Such other and further relief as this Court may find just and proper.


DATED:        New York, New York
              January 15, 2019

Respectfully submitted,

By: /s/ Michael Grinthal

URBAN JUSTICE CENTER

Michael Grinthal, Esq. (MG2547)
123 William Street, 16th Floor
New York, NY 10038
Phone: (646) 459-3039
Fax: (212) 533-4598
Email: mgrinthal@urbanjustice.org

Oluwadamilola Edirin Obaro, Esq. (OO2460)
123 William Street, 16th Floor

New York, NY 10038
Phone: (646) 459-3096
Fax: (212) 533-4598
Email: dobaro@urbanjustice.org