UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
TAMMY BRAKE,                                             :
                                                        :
                                    Plaintiff,          :
                                                        :     <u>MEMORANDUM & ORDER</u>
                      -against-                          :
                                                        :     19-CV-280 (ENV)(JO)
SLOCHOWSKY & SLOCHOWSKY, LLP,                            :
EAST 22ND STREET TOWERS LLC,                  :
YOSSEL LICHTMAN,                                         :
SARA LICHTMAN, and                                      x
MAYER WALDMAN,

                                    Defendants.
-------------------------------------------------------------

VITALIANO, D.J.


        Plaintiff Tammy Brake initiated this action against her landlord corporation, affiliated

officers and agents, and the corporation's former attorneys for alleged violations of federal, state,

and local law in connection with rent demands and repeated housing court actions for purported

nonpayment of rent.  She asserts claims under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and N.Y. Judiciary Law § 487 ("Judiciary Law"), against

the law firm Slochowsky & Slochowsky, LLP ("Slochowsky"), as well as a claim under N.Y.C.

Admin. Code § 27-2005(d), against East 22nd Street Towers LLC ("East 22"), Yossel Lichtman,

Sara Lichtman, and Mayer Waldman (collectively, "landlords").  Further, plaintiff claims all

defendants violated New York General Business Law § 349 ("GBL").  Defendants move to

dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Alternatively, defendants seek an order declining supplemental jurisdiction, and severing and

remanding non-federal claims, pursuant to 28 U.S.C. § 1367(c).  For the reasons set forth below,

Slochowsky's motion to dismiss is granted with respect to plaintiff's claims under FDCPA

§ 1692d, Judiciary Law § 487, and GBL § 349, but denied with respect to plaintiff's claims under FDCPA §§ 1692e and 1692f. The landlords' motion to dismiss with respect to plaintiff's claims under GBL § 349 is granted, but denied with respect to plaintiff's N.Y.C. Admin. Code § 27-2005(d) claim.

<u>Background</u>

Plaintiff is the rent-stabilized tenant of 596 East 22nd Street, Apt. 4B, in Brooklyn, where she has resided for over 30 years. Dkt. 1 ("Compl.") ¶ 12. The apartment building is owned by East 22. Compl. ¶ 8. Defendants Yossel Lichtman, Sara Lichtman, and Mayer Waldman are officers and agents affiliated with East 22. *See* Compl. ¶¶ 9–11. On or around January 11, 2018, plaintiff received a "five-day notice" from East 22, advising her that she owed $2130.81 total in past due rent for the months of November 2017, December 2017, and January 2018. *See* Compl. ¶ 15.[1] On February 13, 2018, the Urban Justice Center, acting as plaintiff's attorney, responded by letter to East 22 that plaintiff had already paid rent for the noticed months and even provided relevant canceled checks as proof. *Id.* ¶ 17. Moving quickly, however, Slochowsky had already commenced a housing court action on East 22's behalf, seeking $2130.81 in rent arrears and $272.00 in legal fees. *Id.* ¶¶ 18-19.

Both parties appeared in housing court on February 21, 2018, where a Slochowsky associate provided a rent ledger from East 22, showing that plaintiff had paid rent for all months between February 2016 and 2018. *See id.* ¶ 20. But, the ledger also listed an unspecified "carried balance" of $637.54 from prior to February 2016. *Id.* ¶ 21. Because of the carried

---

[1] In line with New York law, the five-day notice served on plaintiff demanded payment of all past-due rent within five days of service, failing which the landlord would "commence summary proceedings to recover possession of the above-referenced premises." Dkt. 20-2, Ex. C.

balance, Slochowsky declined to discontinue the proceeding. *Id.* The proceeding was adjourned until March 13, 2018, for Slochowsky to substantiate the carried balance, but the firm was unable to do so. *Id.* ¶¶ 21–22. With the absence of any proof, the parties signed a stipulation discontinuing the action with prejudice through February 2018. *Id.* ¶ 22. Then, on or around June 4, 2018, plaintiff received another five-day notice from East 22, again alleging she owed $2130.81 in past due rent. *Id.* ¶ 23. Slochowsky commenced a second housing court action on East 22's behalf, seeking $1711.75 in rent arrears and legal fees. *Id.* ¶ 24. The parties again appeared in housing court on August 6, 2018, where a Slochowsky associate again produced a rent ledger from East 22. *Id.* ¶ 25. The ledger did not appear to have been updated to reflect the prior action, as the original carried balance still appeared. *Id.* The proceeding was adjourned until October 3, 2018, for the parties to review ledger. *Id.* ¶ 26. Immediately after the August 2018 hearing and again in September, the Urban Justice Center emailed Slochowsky with an attached copy of the March 13 stipulation requesting the firm discontinue the action. *Id.* ¶¶ 27–28. Slochowsky responded that they would not discontinue because of rent owed by plaintiff prior to 2018. *Id.* ¶ 28. Presumably, rather than come up empty again before the housing court judge, the landlords affirmed and the parties signed, on October 3, 2018 (the day before the scheduled hearing), a stipulation discontinuing the action. *Id.* ¶¶ 30–32.

Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). When determining if a plaintiff has met this

burden, a district court may consider evidence outside the pleadings. *See Makarova*, 201 F.3d at 113. Since subject matter jurisdiction is a threshold issue, when a party moves to dismiss under both Rule 12(b)(1) and 12(b)(6), as defendants do here, the motion court must address the 12(b)(1) motion first. *Sherman v. Black*, 510 F.Supp.2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

Assuming subject matter jurisdiction is established, surviving a Rule 12(b)(6) motion requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). Additionally, a court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

In deciding a Rule 12(b)(6) motion, a court may consider documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit, and matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (emphasizing that "mere notice or possession [of a document] is not enough")).

<u>Discussion</u>

I.    <u>The FDCPA Claim</u>

FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to [e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Its protections extend to a variety of "deceptive or harassing actions taken by debt collectors." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002). A particular goal was to address "'the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting S.Rep. No. 95–382, at 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1699). Because of its remedial nature, FDCPA is construed liberally to effectuate its statutory purpose. *See Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (citation omitted).

Brake alleges that Slochowsky's pursuit of meritless litigation violated three of FDCPA's consumer protections: 15 U.S.C. §§ 1692d, 1692e, and 1692f. Slochowsky raises several grounds for dismissal, including: (1) lack of subject matter jurisdiction under preclusion principles, (2) failure to state a cognizable claim, and (3) lack of compensatory damages. Because subject matter jurisdiction is an overarching issue, it is addressed first.

A.    Rooker-Feldman *Doctrine*

The Supreme Court's decisions in *Rooker* and *Feldman* "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) ("no

court of the United States other than [the Supreme Court]" has appellate jurisdiction over state court judgments); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings"). Under *Rooker-Feldman*, a federal district court lacks jurisdiction over a claim where: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced. *Hoblock*, 422 F.3d at 85 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005)). As a state court of record, a New York City Housing Court "stipulation of settlement" with prejudice constitutes a state court judgment for *Rooker-Feldman* purposes. *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009) (collecting cases).

Here, the housing court stipulations in question fail to meet even the first requirement for *Rooker-Feldman* application. Plaintiff is not inviting the district court to review and reject an adverse state court judgment, as both housing court actions led to discontinuances in her favor. Rather, she seeks to hold defendants accountable for the course of conduct in pursuing those actions. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015) ("[C]laims sounding under the FDCPA . . . speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments."). Therefore, the FDCPA claims cannot be barred on *Rooker-Feldman* grounds.

B.     Res Judicata *and Collateral Estoppel*

New York law governs the preclusive effect of the housing court stipulations, as "a federal court must give to a state-court judgment the same preclusive effect as would be given

that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Under New York law, a stipulation with prejudice is accorded the same preclusive effect as a final judgment on the merits. *See Northshore–Long Island Jewish Health Sys., Inc. v. Aetna U.S.,* 811 N.Y.S.2d 424, 426 (App. Div. 2006) ("A stipulation of discontinuance which specifies that it is 'with prejudice' raises a presumption that the 'stipulation is to be given res judicata effect in a future litigation' on the same cause of action." (quoted reference omitted)); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes.").

More broadly, the doctrine of *res judicata*, or claim preclusion, "bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity to a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008) (internal citation and quotation marks omitted). *Res judicata* applies only to compulsory counterclaims, not to permissive counterclaims. *Critical–Vac Filtration Corp. v. Minuteman Int'l, Inc.,* 233 F.3d 697, 702 (2d Cir. 2000) ("The fact that [a claim] might have been asserted as a counterclaim in the prior suit . . . does not mean that the failure to do so renders the prior judgment res judicata as respects it.") (quoting *Mercoid Corp. v. Mid–Continent Inv. Co.,* 320 U.S. 661, 671, 64 S.Ct. 268, 274, 88 L.Ed. 376 (1944)).

The bumbling start on the *res judicata* defense is, if anything, worse than the fundamental deficiencies in the *Rooker-Feldman* defense. A *sine qua non* to the application of res judicata—

or, as will be seen *infra*, collateral estoppel—is that the claimant had made a claim or had a compulsory counterclaim against the defendant in prior litigation and lost. There is nothing in the pleadings or the record to suggest any such claim against Slochowsky. Worse than that, even if Brake *had* made a claim or eschewed a compulsory counterclaim against the landlords in the prior proceedings, Brake asserts her FDCPA claims against Slochowsky—the law firm that represented the landlords in the underlying housing court actions. Though both actions resulted in stipulations comprising judgments on the merits rendered by a court of competent jurisdiction, the FDCPA claims cannot be barred by *res judicata* because Slochowsky was not a party to those actions. *See Cousins v. Duane St. Assocs.*, 7 F. App'x 85, 85 (2d Cir. 2001) ("[W]e do not understand New York preclusion law to require a defendant in a summary nonpayment proceeding brought by his landlord to initiate third-party practice against the landlord's attorneys in order to preserve claims under the FDCPA."). Moreover, it cannot be said that, in this context, Slochowsky was a nonparty in privity to the landlords during the housing court actions. *See Green v. Santa Fe Indus., Inc.*, 514 N.E.2d 105 (N.Y. 1987) (asserting that privity exists where there is a connection between a party to litigation and a nonparty "such that the interests of the nonparty can be said to have been represented in the prior proceeding."). The only interests represented in the housing court actions were those of the tenant and landlord. Consequently, under New York law, the FDCPA claims are not barred by *res judicata*.

Cut from similar cloth, collateral estoppel, or issue preclusion, "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo,* 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.,* 482 N.E.2d 63, 67 (N.Y. 1985)). Slochowsky need not

be a party in the underlying housing court actions to invoke collateral estoppel, *see Corto v. Lefrak*, 610 N.Y.S.2d 214, 216 (App. Div. 1994), that is, of course, if the doctrine is otherwise applicable.

Honing in on the issue of harassment, Slochowsky argues that it should be barred from inclusion in the FDCPA claims because plaintiff checked the box marked "harassment" in her form response to the first housing court action, *see* Dkt. 22-6 (Slochowsky Aff. Ex. D), failed to do so in the second housing court action, *see* Dkt. 22-10 (Slochowsky Aff. Ex. H), and voluntarily submitted to prejudicial stipulations that preclude its relitigation. However, the "harassment" issue raised as a "counterclaim" by Brake in the first housing court proceeding is not identical to harassment as alleged through FDCPA. *Cf Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 ARR VVP, 2014 WL 4843947, at *10 (E.D.N.Y. Sept. 26, 2014) ("Even if the Housing Court had addressed the merits of plaintiff's allegations, the standard for deciding whether to sanction an attorney is different from the standard for deciding whether a statement violates the FDCPA."). Plaintiff's harassment allegation under section 1692d pertains to the "commencing of repeated baseless or frivolous court proceedings." *See* Dkt. 23 at 20 n.2. In this context, the harassment issue raised in the first housing court action could not possibly have taken into account the second proceeding months later. Consequently, plaintiff's FDCPA claims charging harassment are not barred by collateral estoppel, and Slochowsky's motion to dismiss on these grounds is denied.

C.      *Failure to State a Claim*

Moving on to the Rule 12(b)(6) motion, a plaintiff must satisfy three requirements to state a claim under FDCPA:  (1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant

collecting the debt must be considered a "debt collector", and (3) the defendant must have engaged in an act or omission in violation of FDCPA requirements. *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016), *aff'd,* 707 F. App'x 724 (2d Cir. 2017); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013). Conceding the first two prongs, Slochowsky asserts that plaintiff has failed to plead sufficient facts showing some act or omission in violation of FDCPA. Brake's claims under three separate sections of FDCPA will be analyzed individually.

       i.     <u>Section 1692d Claim</u>

Section 1692d prohibits conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. This section contains a non-exhaustive list of proscribed misconduct including violence, threats of violence, obscene language, publishing shame lists, and unrelenting phone calls. *See id.* § 1692d(1)–(6). Brake alleges that Slochowsky's initiation of two housing court actions demanding undue rent payments had the natural consequence of harassing, oppressing, and abusing her. For support, she points to *Curto v. Palisades Collection LLC*, where the court acknowledged that successive filings of collection actions may be in violation of § 1692d. No. 07-CV-529 (S), 2011 WL 5196708, at *6 (W.D.N.Y. Oct. 31, 2011) ("[T]his Court is unprepared to say that bringing one lawsuit after another, and failing to fully prosecute any of them, cannot rise to the level of abusive or oppressive behavior in violation of § 1692d." (citations omitted)).

But, the circumstances here are very different from those in *Curto*, and its authority is accordingly given little weight here. The violation in *Curto*, unlike here, involved four debt collection actions and implicated the practice of forum abuse. *See id.* at *3. In fact, the violation

of § 1692i's venue requirements was the primary reason for denying the defendant summary judgment. *See id.* Further, "[s]ection 1692d is meant to protect debtors from oppressive and outrageous conduct, but not from every negative consequence of debt collection." *See Johnson v. Capital Mgm't Servs.*, No. 10-CV-467A, 2011 WL 6012509, at *5 (W.D.N.Y. Dec. 1, 2011) (citations omitted). The Sixth Circuit has noted that "the examples of oppressive conduct listed in § 1692d concern tactics intended to embarrass, upset, or frighten a debtor." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006). While this Court does not go so far as to say that the initiation of two successive collection actions can never have the natural consequence of harassing or abusing, the claim here, as alleged, clearly does not demonstrate the tone of intimidation implied by § 1692d. *See id.* ("Courts have . . . dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor.") (collecting cases). Accordingly, since the conduct pled in the complaint does not reach that level of harassment, plaintiff's § 1692d claim is dismissed.[2]

ii.     FDCPA §§ 1692e and 1692f Claims

FDCPA § 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, while § 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. These sections again include non-exhaustive lists of proscribed misconduct, including, as relevant here: false representations as to "the character, amount, or legal status of a

---

[2] The application of FDCPA to housing court proceedings, which are arguably equitable in nature and not "in connection with the collection of a debt," has not been fully explored. However, at least one court in this Circuit has entertained FDCPA claims predicated on housing court proceedings. *See Lautman v. 2800 Coyle St. Owners Corp.*, No. 13-CV-967 ARR VVP, 2014 WL 2200909, at *7 (E.D.N.Y. May 23, 2014).

debt," § 1692e(2)(A); "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10); and "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," § 1692f(1).

Courts in this circuit have held that inaccurate statements made by debt collectors regarding the amount of rent owed states a plausible claim for a § 1692e violation. *See, e.g.*, *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *5 (S.D.N.Y. Mar. 29, 2018) (holding debt collector's attempt to collect undue rent through multiple eviction proceedings was a plausible violation of § 1692e); *Lee v. Kucker & Bruh, LLP*, 958 F.Supp.2d 524, 528 (S.D.N.Y. 2013) (holding that debt collector's false statement that tenant's account was delinquent violated § 1692e despite misinformation from creditor). Further, *Vangorden v. Second Round, Ltd. P'ship*, upon which Brake relies, held that a plaintiff plausibly alleged that a collection letter he received violated §§ 1692e and 1692f because, as here, he did not owe the stated debt. 897 F.3d 433, 438 (2d Cir. 2018).[3] In accord with this reasoning, and viewing the complaint in the most favorable light, Brake's allegations concerning Slochowsky's attempt to collect an invalid debt are sufficient to plausibly state a claim to relief under both sections 1692e and 1692f. *See Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135, 136-38 (2d Cir. 2017).

Slochowsky attempts to counter plaintiff's claims by arguing that the Second Circuit has affirmed dismissal of FDCPA claims under analogous facts. *See DiMatteo v. Sweeney, Gallo,*

---

[3] Brake also relies on *Vangorden* to counter Slochowsky's argument that a consumer is required to dispute a debt under 15 U.S.C. § 1692g(b) to support a FDCPA violation. Indeed, the Second Circuit rejected this argument because "nothing in the text of the FDCPA suggests that a debtor's ability to state a §§ 1692e or 1692f claim is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g." *Id.* at 439 (internal quotation marks and citation omitted). Thus, whether or not Brake responded to Slochowsky's validation notice is immaterial regarding her ability to state a claim under §§ 1692e and 1692f.

*Reich & Bolz, L.L.P.*, 619 F. App'x 7, 10 (2d Cir. 2015) (summary order).  However, the facts in *DiMatteo* are distinguishable from the instant case.  In *DiMatteo*, the alleged debt arose because the landlord refused to accept payment tendered from the plaintiff's cotenant.  *Id.* at 9.  Accordingly, the court of appeals held that there was no false representation under FDCPA because governing law was unclear as to whether a landlord could lawfully refuse payment from a cotenant.  *Id.*  Here, the disputed debt involves a garden-variety nonpayment with no legal uncertainties as to the falsity of the debt collector's representation.  All in all, Break's FDCPA claims pursuant to §§ 1692e and 1692f survive Slochowsky's motions to dismiss.[4]

II.      Pendent State and Local Law Claims

Under Article III of the United States Constitution, this Court has original jurisdiction over plaintiff's claim under FDCPA and may exercise supplemental jurisdiction over plaintiff's state and local law claims to the extent that they "form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal quotation marks and citation omitted).  The Second Circuit has indicated that a common nucleus of operative fact can exist "even if the state law claim is asserted against a party different from the one named in the federal claim."  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).  Here, plaintiff's state and local law claims derive from a common nucleus of operative fact since they arise out of the same rent demands and housing court actions brought against plaintiff.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002)

---

[4] Given that statutory damages are available under FDCPA, Slochowsky's argument regarding the absence of actual damages is premature and meritless with respect to this motion.

(exercising supplemental jurisdiction was proper where plaintiff's federal and state claims arose "out of approximately the same set of events . . . .").

With this framework as a guide, it is clear that the exercise of supplemental jurisdiction over plaintiff's GBL § 349, Judiciary Law § 487, and N.Y.C. Admin. Code. § 27-2005(d) claims is appropriate, as they arise out of the same facts as plaintiff's FDCPA claims. Thus, "considerations of judicial economy, convenience, and fairness to litigants" strongly weigh in favor of deciding these claims in the same forum. *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966).

A.      *GBL § 349 Claims*

Both the landlords and Slochowsky move to dismiss plaintiff's GBL § 349 claims for failure to state a claim. GBL § 349 "appl[ies] to virtually all economic activity," but the the conduct at issue must be "consumer-oriented." *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665, 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 498 (1999); *see also Koch v. Acker, Merrall, Condit & Co.*, 967 N.E.2d 675, 675, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452 (N.Y. 2012) (a GBL § 349 claim requires plaintiff to allege that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice") (internal quotation marks and citation omitted). The touchstone for application of the law is determining whether "the acts . . . complain[ed] of are consumer-oriented in the sense that they potentially affect similarly situated consumers." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529 (N.Y. 1995); *see Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) ("Private transactions not of a recurring nature or without ramifications for the general public do not fall within the purview of section 349.").

As courts in this Circuit have observed, whether "a rent dispute between a tenant and her landlord is inherently consumer oriented is not well established." *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 1:17-CV-04525-GHW, 2018 WL 2247206, at *8 (S.D.N.Y. May 16, 2018) (collecting state court decisions in which rent disputes were held to be private, rather than consumer-oriented). In a similar case, *Lautman v. 2800 Coyle St. Owners Corp.*, No. 13-CV-967 ARR VVP, 2014 WL 2200909 (E.D.N.Y. May 23, 2014), another plaintiff in this District predicated his claims on the initiation of housing court proceedings for rent arrears that were not, in fact, owed by the plaintiff. *Id.* at *8. The court held that "Housing Court proceedings do not involve the deceptive consumer-oriented type of conduct targeted by the statute", but declined to rule as to whether other types of conduct on the part of the landlord might have been consumer oriented. *Id.* More recently, in *Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616, at *6 (E.D.N.Y. Sept. 30, 2020), the court dismissed GBL § 349 against the very same Slochowsky law firm for similar conduct—initiating repeated debt-collection actions in housing court on behalf of a landlord client—but gave plaintiff leave to amend her complaint with allegations satisfying the "consumer oriented" requirement of GBL § 349.[5]

---

[5] The Court notes the curiosity of holding attorneys liable for conduct in litigation under the same provision of law that governs salesmen's representations as to the tensile strength of wire. Indeed, subjecting attorneys to civil liability for misrepresentations under a different standard than provided under the Judiciary Law could detract from the goals of its more narrowly tailored provisions, including the civil remedy provided in Judiciary Law § 487. However, the broad applicability of GBL § 349, including to the regulation of the legal profession, has been affirmed by the courts of New York. *See People v. Law Office of Capoccia*, 733 N.Y.S.2d 550 (App. Div. 2001) (citing *Karlin*, 93 N.Y.2d at 290). As a predictable consequence, GBL § 349 is now frequently alleged against law firms involved in debt collection, but rarely, if ever, successful. This owes in large part to the difficulty of pleading that conduct in a single lawsuit—or even a succession of lawsuits—could satisfy the "consumer-oriented" requirement of GBL § 349. *See, e.g.*, *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112

Presently, plaintiff's complaint reads, at most, as a private dispute with the landlords and Slochowsky, rather than "showing injury or potential injury to the public." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 65 (2d Cir. 2010). "In light of this, to prove her GBL claim against [defendants], [p]laintiff would be required to produce evidence that [defendants'] alleged conduct has injured, or could potentially injure, the public at large." *Dzganiya*, 2018 WL 2247206, at *9. In her complaint, plaintiff merely alleges that defendants have engaged in "a pattern and practice of misrepresenting the fact and amount of rental arrears to tenants and to courts." Compl. ¶ 58. This conclusory allegation does not nearly meet plaintiff's burden to plead that an injury or potential injury to the public might arise from defendants' conduct. *See Finch*, 2020 WL 5848616, at *6 ("[P]laintiff's allegation regarding the number of eviction actions filed by a law firm, without more, does not enable a court to draw the reasonable inference that defendants are engaged in a pattern of misconduct involving other tenants." (internal quotation omitted)). *Samms*, 112 F. Supp. 3d at 167 ("[A]lthough the SAC alleges in conclusory fashion that '[defendant] has filed suits against consumers other than [plaintiff] demanding judgment that includes attorney's fees when the claims were limited to claims that did not allow for recovery for attorney's fees,' this allegation falls short of establishing that Abrams's conduct had a 'broader impact on consumers at large.'"). Plaintiff's GBL § 349 claim is thus dismissed, although she may amend her complaint with well-pled allegations of actual or potential public injury, including concrete allegations concerning similar conduct aimed at an appreciable number of other tenants.

---

F. Supp. 3d 160, 167 (S.D.N.Y. 2015). The Court is aware of no successfully pled GBL § 349 claim against a law firm in this context.

B.      *The Judiciary Law § 487 Claim*

Judiciary Law § 487 provides for a private cause of action and treble damages where an attorney "is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."  N.Y. Judiciary Law § 487.  In *Amalfitano v. Rosenberg*, the New York Court of Appeals ruled that actions brought under the statute may be based on an attempted, albeit, unsuccessful, deceit.  903 N.E.2d 265, 12 N.Y.3d 8, 9, 874 N.Y.S.2d 868 (N.Y. 2009).  Hardly surprising, given the intentional nature of the harm, allegations regarding an intent to deceive must be stated with particularity.  *See Jean v. Chinitz*, 83 N.Y.S.3d 55 (App. Div. 2018) (upholding motion to dismiss where plaintiff failed to plead with the requisite particularity under § 487); *see also* CPLR 3016[b] ("Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail.").[6]

On top of that, New York state courts have repeatedly ruled that to assert a successful § 487 claim a plaintiff must allege a chronic and extreme pattern of legal delinquency. *O'Callaghan v. Sifre*, 537 F.Supp.2d 594, 596 (S.D.N.Y. 2008) ("Under this threshold, an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487."); *see also, e.g.*, *Shawe v. Elting*, 77 N.Y.S.3d 400 (App. Div. 2018), leave to appeal denied, 113 N.E.3d 948, 32 N.Y.3d 907, 89 N.Y.S. 3d 114 (N.Y. 2018); *Pannone v. Silberstein*, 990 N.Y.S.2d 164 (App.

---

[6] Following logically from New York case law on the pleading of Judiciary law § 487 claims, Slochowsky properly contends that Judiciary Law § 487 is subject to heightened pleading standards under Federal Rule of Civil Procedure 9(b).  *See* Dkt. 22-1 at 14.  The case cited in support of this assertion held that because New York state courts routinely use a Rule 9(b) analog in deciding § 487 claims, it was appropriate to apply Rule 9(b) when deciding the state claim at the federal level.  *See Bryant v. Silverman*, 15 Civ. 8427 (PAC) (HBP), 2017 WL 887043, at *2 (S.D.N.Y. Mar. 6, 2017).  This approach is followed here.

Div. 2014), leave to appeal denied, 28 N.E.3d 40, 24 N.Y.3d 917, 4 N.Y.S.3d 604, (N.Y. 2015); *Chowaiki & Co. Fine Art Ltd. v. Lacher*, 982 N.Y.S.2d 474 (App. Div. 2014). Finally, a plaintiff must plead and establish actual damages caused by the deceit or collusion alleged. *See Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196 (S.D.N.Y. 2006), aff'd, 572 F.3d 91 (2d Cir. 2009).

Plaintiff asserts that Slochowsky intended to deceive because, given that it had the rent ledgers in its possession, the lawsuits that it filed were "either deliberate attempts to collect a debt that they knew was not owed and legally could not be collected, or else stunningly careless actions taken without even the slightest review of the records in their possession." Compl. ¶ 36. This assertion, devoid of any particularity concerning the attendant circumstances, would scarcely meet the bare plausibility standard articulated in *Twombly*, let alone the heightened pleading standard of Rule 9(b) or "the strict test New York law imposes to satisfy § 487." *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 597 (S.D.N.Y. 2008).

More fundamentally, even assuming *arguendo* that plaintiff did plead facts sufficient for alleging deceitful intent, Slochowsky's conduct, as pled, is not sufficiently extreme or egregious to satisfy the high threshold requirements imposed by New York courts. *See Ray v. Watnick*, 182 F. Supp. 3d 23, 29-31 (S.D.N.Y. 2016), as amended (May 3, 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017) (liability attaches "only if the deceit is 'extreme' or 'egregious'" and thus "the more appropriate context for analysis is not the law applicable to comparable civil torts but rather criminal law"). There is nothing to suggest that plaintiff could plead additional facts that are sufficiently egregious to satisfy the statute, much less with the particularity required. Accordingly, plaintiff's Judiciary Law § 487 claim is dismissed without leave to amend.

C.    *The N.Y.C. Administrative Code Claim*

New York City's Housing Maintenance Code "protects residential tenants from harassment by building owners," pursuant to N.Y.C. Admin. Code § 27-2005(d).  *Aquaiza v. Vantage Properties, LLC*,  893 N.Y.S.2d 19, 20 (App. Div. 2010); *see also* N.Y.C. Admin. Code § 27-2004(a)(48) (defining "harassment" as "any act or omission by or on behalf of an owner that . . . causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy").  N.Y.C. Admin. Code § 27-2115(h), in turn, provides a private right of action to tenants facing harassment, as defined under § 27-2005(d), by the "owners" of their dwelling units, including, as relevant here, commencing repeated baseless or frivolous court proceedings. *See* N.Y.C. Admin Code. § 27-2004(a)(48).

The landlords attack the court's power to entertain this claim, contending that plaintiff's failure to join the New York City Department of Housing Preservation and Development ("HPD") as a party precludes a private right of action brought under § 27-2115(h) and that the tenant harassment claim should instead be brought in the housing part of Civil Court of the City of New York.  Dkt. 20-3 at 6, 10.  This argument is completely without merit.  Federal district courts regularly entertain claims like these under the N.Y.C. Admin. Code without the presence of HPD as a party.  *See, e.g.*, *Tejada v. LittleCity Realty LLC*, 308 F. Supp. 3d 724, 733 (E.D.N.Y. 2018); Khodeir v. Sayyed, 15 Civ. 8763 (GWG), 2017 WL 4993384 (S.D.N.Y. Nov. 1, 2017).  Indeed, the proposition that such matters may only be brought in the housing part of the Civil Court is, in any event, highly dubious even as a matter of state law.  *See Aguaiza v. Vantage Properties*, *LLC*, No. 105197/08, 2009 WL 1511791, at *9 (N.Y. Sup. Ct. May 21, 2009) ("Local Law 7 contains no language requiring adjudication of a tenant harassment claim

by the Housing Court vesting that court with primary exclusive jurisdiction."); *Aguaiza v. Vantage Properties, LLC*, 893 N.Y.S.2d 19 (App. Div. 2010).  Accordingly, this Court is able to exercise jurisdiction over plaintiff's N.Y.C. Admin. Code claim.

The landlords make two additional arguments as to why plaintiff's N.Y.C. Admin. Code claim must nevertheless fail: (1) they are not "owners" as defined by the statute (Dkt. 20-3 at 11); and (2) plaintiff has not pled facts sufficient to show tenant harassment via "repeated" baseless court proceedings (*Id.* at 8).  As for the first, the definition of "owner" under the Housing Maintenance Code is, *inter alia*, "any person, firm or corporation, directly or indirectly in control of a dwelling."  N.Y.C. Admin. Code § 27-2004(a)(48).  The landlords here consist of the head officer, registered agent, and managing agent for East 22, the corporate owner of the premises.  These positions are of the kind that fall squarely within this definition.  *See* Dkt. 25 at 6.[7]

The landlords' next contention, that only the *second* of their two housing court actions was baseless, thereby escaping the § 27-2004(a)(48)(ii)(d) language specifying "*repeated* baseless or frivolous court proceedings*" (emphasis added), has more merit.  In support of this

---

[7] *See also HPD v. 849 St. Nicholas Equities*, 141 Misc.2d 258 (Civ. Ct. NY Co. 1988) ("By operation of law, the RMA [Registered Managing Agent] is 'in control' of the building; proof of the specific agent's relation to the property is irrelevant."); *Department of Housing Preservation and Development of City of New York v. 2515 LLC*, 6 Misc.3d 1039(A) (Civ. Ct. NY Co. 2005) ("A registered managing agent is therefore an 'owner' for the purpose of imposing liability for HMC violations."); *Langsam Prop. Servs. Corp. v. McCarthy*, 690 N.Y.S.2d 208 (App. Div. 1999); *Department of Housing Preservation and Development of City of New York v. Livingston*, 169 Misc.2d 660 (App. Term 2d Dep't 1996); *Steven Robinson v. Milton Taube and 110 Realty Equities LLC*, 2019 WL 1998128 (Civ. Ct. NY Co. 2019) ("The purpose of this language is to impose liability on any entity or person with some say in the operation of a building, such as an officer or a corporate landlord"); *Schlam Stone & Dolan, LLP v. Poch*, 40 Misc.3d 1213(A) (Sup. Ct. NY Co. 2013) ("the term 'owner' is broadly construed as any person who is directly or indirectly control of the subject building . . . Therefore, personal liability may attach to a corporate officer who is construed to be an agent irrespective if the officer is or is not involved with the operation of the subject building.").

argument, the landlords contend that the complaint itself admits that "the owner in the first eviction did produce a rent ledger that listed a carried balance of $637.54" and that the mere fact that the owner could not further substantiate that claim does not render it "baseless or frivolous." Dkt. 20 at 12; *see* Compl. ¶¶ 20-21. Plaintiff responds that the ledger does not conclusively establish that the first proceeding was initiated in good faith and that whether it was baseless is an issue of fact. Dkt. 20-1 at 18-19.

There does not appear to be any existing law articulating what, exactly, might constitute a "baseless or frivolous" proceeding under § 27-2004(a)(48).[8] One analogous area in which frivolous proceedings are discussed is in the context of awarding costs or sanctions. New York law provides for sanctions and costs for "frivolous" conduct, which is defined to include conduct that "is completely without merit in law" or "assert[ing] material factual statements that are false." N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(c). Further, "[i]n determining whether the conduct undertaken was frivolous, the court shall consider, among other issues, the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party." *Id.*

Suffice it to say, though, that at this stage, it cannot be held as a matter of law that the landlords' first housing court proceeding was not frivolous. Indeed, there are allegations in the complaint indicating that the landlords knew, or should have known, that their assertions were

---

[8] Further, the more plentiful body of law, discussed *supra*, addressing Plaintiff's other causes of action dealing with harassment, appear to shed little light on § 27-2004(a)(48). This is because, unlike those other statutes, "harassment" is specifically defined to encompass, *inter alia*, "repeated baseless or frivolous court proceedings." N.Y.C. Admin. Code § 27-2004(a)(48)(ii)(d).

meritless and factually false. In particular, plaintiff alleges that during the first housing court proceeding, counsel for the landlords "provided a printout from East 22's rent ledger acknowledging that East 22 had timely received and cashed Ms. Brake's rent check for every month from February 2016 through February 2018" and was "unable to say when or how East 22 believed that [the unspecified balance of $637.54] had arisen." Compl. ¶¶ 20-21.[9] This suggests that, despite having had time to do so, defendants engaged in no investigation at all into the factual basis for their claim against plaintiff.

That such allegations can allow a claim based on § 27-2005(d) to survive a motion to dismiss is hardly unfair to the landlords, as the statute requires *repeated* baseless or frivolous lawsuits to constitute harassment. Defendants tempted fate by initiating the second housing court proceeding after the spectacular failure of their first proceeding, and now plaintiff will have the opportunity to demonstrate, as a matter of fact, that both proceedings were frivolous or baseless. Accordingly, the Court denies the landlords' motion to dismiss plaintiff's N.Y.C. Admin. Code § 27-2005(d) claim.

## Conclusion

In line with the foregoing, Slochowsky's motion to dismiss plaintiff's claims is granted as to plaintiff's claims under FDCPA § 1692d, GBL § 349, and Judiciary Law § 487, but denied as to plaintiff's claims under FDCPA §§ 1692e and 1692f. The landlords' motion to dismiss is granted as to plaintiff's GBL § 349 claim, but denied as to plaintiff's N.Y.C. Admin. Code § 27-2005(d) claim. Plaintiff is given leave to amend her complaint with respect to her GBL § 349

---

[9] Plaintiff also points to the letter written by her counsel to defendants, dated February 13, 2020, sending photocopies of the cancelled checks. Compl. ¶ 18. But this letter was sent more than a week after housing court proceedings were initiated on February 5, 2020, Dkt. 20-2, Ex. E, and, does not support her contention that defendants knew the lawsuit was baseless.

claims within 30 days of the docket entry of this Order if she can do so in good faith, given the

high bar set for such claims based on conduct in the course of debt collection litigation.


So Ordered.
Dated:  Brooklyn, New York
        November 22, 2020


                                        */s/ Eric N. Vitaliano*
                                        ERIC N. VITALIANO
                                        United States District Judge